1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA BUEHLER,

               Plaintiff,

    v.

NATIONSTAR MORTAGE LLC et al.,

               Defendant.

CASE NO. 3:24-cv-05759-DGE

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 13)

This lawsuit involves convoluted facts that will ultimately require the production of an appropriate loan amortization table to help determine the true amount Plaintiff Donna Buehler (Buehler) owes to Defendant Nationstar Mortgage LLC (Nationstar). For now, Buehler has alleged sufficient facts calling into question the amount Nationstar seeks to recover by way of a trustee's sale of Buehler's property.

For the reasons stated herein, Defendants' motion for judgment on the pleadings (Dkt. No. 13) is DENIED IN PART and GRANTED IN PART, with leave to amend.

---

**1 | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# I     BACKGROUND

## A. Factual Background

The following facts are as asserted in the operative complaint, as contained in the documents filed therewith, and as contained in any documents for which judicial notice is appropriate under Evidence Rule 201(b).[1]

Buehler resides at 9123 34th Street East, Puyallup, Washington (hereinafter, the "Property"). (Dkt. No. 1-2 at 2.) In January 2007, Buehler obtained a residential mortgage loan on the Property pursuant to a Promissory Note secured by a deed of trust mortgage lien. (*Id.* at 3, 14–16; Dkt. No. 14-1 at 2–16.) At all times relevant, Nationstar has acted as the beneficiary of the deed of trust and holder of the Promissory Note on behalf of the actual owner and beneficiary, Defendant Bank of New York Mellon (BNY). (Dkt. No. 1-2 at 3.) Defendant Quality Loan Service, Corp. of Washington is the trustee for the deed of trust and authorized to act on behalf of Nationstar and BNY regarding possible non-judicial foreclosure of the Property. (*Id.*)

The original loan amount of the Promissory Note was $300,000, with an interest rate of 8.7% per annum on the unpaid principal balance, and monthly payments of $2,349.40 covering

---

[1] "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworking v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Meaning, for purposes of the present motion the Court must accept as true all well-pleaded factual allegations. *See Wood v. City of San Diego*, 678 F.3d 1075, 1080 (9th Cir. 2012). In addition, documents attached to a complaint may be considered if authenticity is not contested and the complaint relies on them. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Likewise, a court may take judicial notice of matters of public record not subject of reasonable dispute without converting a motion to dismiss into a motion for summary judgment. Fed. R. Evid. 201(b); *see also Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

**2 |** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

both principal and interest. (*Id*. at 3, 14–16.) February 1, 2037, is the Promissory Note's maturity date for all outstanding amounts. (*Id*.)

Buehler defaulted on her monthly payments. (*Id*. at 3.) At Nationstar's invitation, in February 2012 Plaintiff applied for a Home Affordable Modification Program loan modification. (*Id*. at 4.) Nationstar then presented Buehler with a Loan Modification Agreement (LMA). (*Id*.) Nationstar instructed Buehler to execute and return the LMA along with a "qualifying payment" of $1,496.32 to effectuate the LMA. (*Id*. at 38.) The qualifying payment would be applied to the "Modification fee of $350.00 . . . [and] any outstanding fees and charges that are not capitalized under the terms of the [LMA], to any unpaid non-capitalized interest[,] and finally to any unpaid principal." (*Id*.)

The LMA identified that as of May 1, 2012, the amount payable under the Promissory Note, plus owed "interest and other amounts capitalized," was $369,918.11. (*Id*. at 17.) The LMA referred to this new amount as the "Unpaid Principal Amount." (*Id*.) Buehler promised to pay the Unpaid Principal Amount, plus interest. (*Id*.) From April 1, 2012, to April 1, 2014, interest on the Unpaid Principal Amount would be at a yearly rate of 4.854%, with Buehler making monthly interest only payments of $1,496.23. (*Id*.) After May 1, 2014, the interest rate Buehler agreed to pay would be "determined in accordance with the terms of the original [Promissory] Note." (*Id*.) February 1, 2037, remained the maturity date for all amounts owing under the LMA and the Promissory Note. (*Id*.)

In the event of default, the LMA provided that,

> at the option of the Lender, shall terminate and all terms of the Note as originally executed shall be reinstated in full, effective as of the date of this modification agreement and the amounts due and payable under the terms of the Note shall be as originally stated therein, as if this Modification Agreement had never existed.

(*Id*.)

**3 |** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

1     On March 30, 2012, two days after executing the LMA, Buehler filed for Chapter 13

2 bankruptcy, which subsequently was converted to a Chapter 7 bankruptcy.  (*Id.* at 5.)  This

3 bankruptcy was discharged on February 12, 2014.  (*Id.* at 5.)[2]  Buehler "did not affirm the debt to

4 Nationstar."  (*Id.*)[3]

5     On March 28, 2013, a Notice of Default issued for failure to make payments under the

6 LMA.  (*Id.* at 5, 19–21.)  The delinquent payments identified in the Notice of Default were as

7 follows:

8     Delinquent Monthly Payments Due from 5/1/2012 through 3/1/2013:

9     11 payment(s) at $1496.32
       Total:                              $16,459.52
10     Accrued Late Charges:               $1,474.64
       Corporate Advance Breakdown          $3,079.12
11     TOTAL DEFAULT                       $21,013.28

12 (*Id.* at 20.)

13     Buehler asserts "Nationstar elected to void the LMA and foreclose under the terms of the

14 original [Promissory] Note."  (Dkt. No. 1-2 at 6.)

15     On November 19, 2013, a Notice of Trustee's Sale for April 4, 2014, was recorded.  (Dkt.

16 No. 14-1 at 37–43.)  The delinquent payments identified in the Notice of Trustee's Sale were as

17 follows:

18     Delinquent Monthly Payments Due from 5/1/2012 through 11/1/2013:

19     13 payment(s) at $2565.43
       1 payment(s) at $3125.74
20     5 payment(s) at 3185.21
       Total:                              $2,402.38

21

---

22 [2] Buehler also filed a second Chapter 13 bankruptcy on March 28, 2014, which was closed on
   May 16, 2014.  (Dkt. No. 14-1 at 31–34.)  Buehler does not reference this bankruptcy filing in
   her Complaint.

23 [3] The import of this fact is unclear at this time as Buehler does not argue this fact in opposition to
   the present motion.

24

**4 |** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS

| | |
|---|---|
| Accrued Late Charges: | $1,848.74 |
| Corporate Advance Breakdowns | 4,180.69 |
| TOTAL DEFAULT | $58,431.81 |

(Dkt. No. 14-1 at 38–39.)  This Notice of Trustee's Sale identified that a Notice of Default had previously been transmitted to Buehler on March 28, 2013.  (*Id*. at 39–40.)

On October 20, 2016, a Notice of Trustee's Sale for February 24, 2017, was recorded. (*Id*. at 45–47.)  This Notice of Trustee's Sale identified the balance in arrears was $196,551.61, but it did not provide information about how this amount was calculated.  (*Id*. at 45.)  This Notice of Trustee's Sale also identified that a Notice of Default had previously been transmitted to Buehler on March 28, 2013.  (*Id*. at 46.)

A January 20, 2017, Mortgage Payoff Statement identified the following amounts owing:

| | |
|---|---|
| Current Unpaid Principal Balance | $369,918.11 |
| (at annual interest rate of 4.854%) | |
| Interest calculated from 04/01/2012 to 02/28/2017 | $129,477.27 |
| Lender Paid Expenses | $7,372.83 |
| Escrow Advances | $52,352.01 |
| Legal Fees | $4,198.97 |
| County Recording Fee | $88.00 |
| Total Amount to Pay Loan in Full | $563,407.19 |

(Dkt. No. 1-2 at 27.)  It also identified the monthly principal and interest payment amount "as of the quote date" was $1,496.32.  (*Id*.)

A May 16, 2017, Mortgage Payoff Statement identified the following amounts owing:

| | |
|---|---|
| Current Unpaid Principal Balance | $369,918.11 |
| (at annual interest rate of 4.854%) | |
| Interest calculated from 04/01/2012 to 02/28/2017 | $137,787.52 |
| Lender Paid Expenses | $9,468.29 |
| Escrow Advances | $59,014.22 |
| Legal Fees | $120.12 |
| County Recording Fee | $88.00 |
| Total Amount to Pay Loan in Full | $576,396.26 |

**5** | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

(*Id*. at 28.)  It also identified the monthly principal and interest payment amount "as of the quote date" was $1,496.32.  (*Id*.)

On June 14, 2017, a Notice of Trustee's Sale for October 20, 2017, was recorded.  (Dkt. No. 14-1 at 49–51.)  This Notice of Trustee's Sale identified the balance in arrears was $233,918.40, but it did not provide information about how this amount was calculated.  (*Id*. at 49.)  This Notice of Trustee's Sale also identified a Notice of Default had previously been transmitted to Buehler on March 28, 2013.  (*Id*. at 50.)

On January 29, 2018, the Parties engaged in a "foreclosure mediation session."  (Dkt. No. 1-2 at 25.)  The parties signed a "Session Summary" in which the parties acknowledged that the "Parties agree that the result of the NPV test is 'pass.'"  (*Id*.)

On July 9, 2018, a Notice of Trustee's Sale for November 16, 2018, was recorded.  (Dkt. No. 14-1 at 53–55.)  This Notice of Trustee's Sale identified the balance in arrears was $275,414.77, but it did not provide information about how this amount was calculated.  (*Id*. at 54.)  This Notice of Trustee's Sale also identified a Notice of Default had previously been transmitted to Buehler on March 28, 2013.  (*Id*.)

On November 8, 2018, Buehler filed a lawsuit against Defendants in Pierce County Superior Court, Cause No. 18-2-12744-6.  (Dkt. No. 1-2 at 5.)  The Pierce County lawsuit raised similar issues now raised in the present litigation but was dismissed without prejudice.  (Dkt. No. 14-1 at 63–71, 80.)[4]

A March 28, 2022, Mortgage Payoff Statement identified the following amounts owing:

| | |
|---|---|
| Unpaid Principal | 369,918.11 |
| Interest Due | 293,338.30 |
| (From 4/01/12 to 03/31/22) at 4.854%) | |

---

[4] The Order of Dismissal references a "Notice of Settlement of All Claims Against All Parties," but the Complaint identifies no resolution was ever reached.  (*See* Dkt. No. 1-2 at 6.)

| | |
|---|---|
| Corporate Advance | 14,712.47 |
| Escrow Advance | 125,805.39 |
| County Recording Fee | 221.00 |
| 3PTY Recon Rel Fee | 20.00 |
| Legal Fees | 585.00 |
| Balance Due | 804,600.27 |

(Dkt. 1-2 at 30.)  It also identified the monthly principal and interest payment amount as being

$1,496.32.  (*Id*.)  It further stated that per diem interest after March 31, 2022, was $88.17.  (*Id*.)

A May 15, 2023, Mortgage Payoff Statement identified the following amounts owing:

| | |
|---|---|
| Unpaid Principal | 369,918.11 |
| Interest Due | 330,885.04 |
| (From 4/01/12 to 03/31/22 at 4.854%) | |
| Corporate Advance | 14,712.47 |
| Escrow Advance | 151,990.08 |
| County Recording Fee | 221.00 |
| 3PTY Recon Rel Fee | 20.00 |
| Balance Due | 867,746.70 |

(*Id*. at 31.)  It also identified the monthly principal and interest payment amount as being

$1,496.32.  (*Id*.)  It further stated that per diem interest after May 31, 2023, was $88.17.  (*Id*.)

An October 30, 2023, Mortgage Payoff Statement identified the following amounts

owing:

| | |
|---|---|
| Unpaid Principal | 369,918.11 |
| Interest Due | 345,653.91 |
| (From 4/01/12 to 03/31/22 at 4.854%) | |
| Corporate Advance | 14,712.47 |
| Escrow Advance | 156,732.81 |
| County Recording Fee | 221.00 |
| 3PTY Recon Rel Fee | 25.00 |
| Balance Due | 887,263.30 |

(*Id*. at 32.)  It also identified the monthly principal and interest payment amount as being

$1,496.32.  (*Id*.)  It further stated that per diem interest after November 16, 2023, was $88.17.

(*Id*.)

A January 10, 2024, Mortgage Payoff Statement identified the following amounts owing:

**7 |** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS

| | |
|---|---|
| Unpaid Principal | 369,918.11 |
| Interest Due | 352,340.32 |
| (From 4/01/12 to 03/31/22) at 4.854%) | |
| Corporate Advance | 14,712.47 |
| Escrow Advance | 156,732.81 |
| County Recording Fee | 221.00 |
| 3PTY Recon Rel Fee | 25.00 |
| Balance Due | 893,949.71 |

(*Id*. at 33.)  It also identified the monthly principal and interest payment amount as being

$1,496.32.  (*Id*.)  It further stated that per diem interest after January 31, 2024, was $88.17.  (*Id*.)

On April 3, 2024, Nationstar issued a "Reinstatement Quote" identifying a reinstatement

amount of $594,129.14.  (*Id*. at 9, 25–26.)  It also identified a monthly principal and interest

obligation of $2,349.40 as of May 1, 2012, which was increased to $3,111.84 on May 1, 2014.

(*Id*. at 25.)

On April 15, 2024, a Notice of Trustee's Sale for August 23, 2024, was recorded.  (Dkt.

No. 14-1 at 82–85.)  This Notice of Trustee's Sale identified the balance in arrears was

$595,129.14,[5] but it did not provide information about how this amount was calculated.  (*Id*. at

83.)  This Notice of Trustee's Sale also identified a Notice of Default had previously been

transmitted to Buehler on March 28, 2013.  (*Id*.)

**B.  Procedural History**

Buehler filed the present litigation in Pierce County Superior Court on August 14, 2024,

under cause number 24-2-10116-6.  (Dkt. No. 1-4 at 2.)  On August 20, 2024, the Pierce County

Superior Court issued a temporary restraining order restraining the August 23, 2024, trustee's

sale.  (*Id*. at 3–4.)  A hearing on Buehler's request for a preliminary injunction was scheduled for

September 6, 2024 (*id*. at 4), but the record does not identify what occurred at the September 6,

---

[5] This amount is $1,000 more than the amount identified in the Reinstatement Quote.

**8 |** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS

2024, hearing.  On September 9, 2024, Defendants removed the litigation to this Court based on diversity jurisdiction.  (Dkt. No. 1.)

Plaintiff's Complaint identifies the following causes of action:

First Cause of Action: "Breach of Contract"

Second Cause of Action: "Violation of the Foreclosure Fairness Act (RCW 61.24.163(14)(c)) Permanent injunction restraining non-judicial foreclosure sale"

Third Cause of Action: "Permanently Enjoin Trustee Sale"

Fourth Cause of Action: "Statute of Limitations Failure to Diligently Pursue Remedial Action"

Fourth Cause of Action: "Nationstar breached its statutory duty of good faith and fair dealing And Violated the Washington State Consumer Protection Act."

Fifth Cause of Action: "Consumer Protection Act"

(Dkt. No. 1-2 at 6–13.)[6]  On October 7, 2024, Defendants filed the present motion for judgment on the pleadings.  (Dkt. No. 13.)  Thereafter, Buehler informed the Court the scheduled trustee's sale was voluntary postponed to December 20, 2024.  (Dkt. No. 17.)

## II    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  Analysis under Federal Rule of Civil Procedure 12(c), like analysis under Federal Rule of Civil Procedure 12(b), requires "a court [to] determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.

---

[6] Buehler's complaint identifies two "Fourth" causes of action.  The titles of the causes of action leave something to be desired based on the allegations contained therein.

**9** | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. C 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)) (internal quotation marks omitted).

Generally, courts must convert a motion for judgment on the pleadings to a motion for summary judgment when it relies on extrinsic matters outside the pleadings. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). However, documents attached to a complaint may be considered if authenticity is not contested and the complaint relies on them. *Lee* 250 F.3d at 688. And, courts may consider matters subject to judicial notice under Federal Rule of Evidence 201 without converting the motion to a summary judgment. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (taking judicial notice of matters of public record outside the pleadings when analyzing a motion to dismiss); *see also Wild Fish Conservancy v. United States Env't Prot. Agency*, 331 F. Supp. 3d 1210, 1217 (W.D. Wash. 2018) ("[On motions under Federal Rules of Civil Procedure 12(b) and 12(c),] a court may consider documents outside the pleadings that are matters of public record based on sources whose accuracy cannot reasonably be questioned") (internal quotations omitted). Matters of public record that may be judicially noticed include pleadings, orders, and other papers filed with the court or records of administrative bodies. *See Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1233 (C.D. Cal. 2003).

Courts have discretion to grant Rule 12(c) motions with leave to amend the complaint. *Special District Risk Management Authority v. Munich Reinsurance America, Inc.*, 565 F. Supp. 3d 989, 994 (E.D. Cal. 2021). Courts should grant such amendment "when justice so requires." Fed. R. Civ. P. 15(a)(2).

In reviewing the present motion, the Court has considered all the documents attached to the Complaint. Also, except for one document, the Court has considered all documents included

in Defendant's Request for Judicial Notice (Dkt. No. 14).  The document identified as the "Foreclosure Mediation Report/Certification" on its face does not meet the requirements of Evidence Rule 201(b).  This document is not self-authenticating, and it is unknown whether that document was filed as part of a court proceeding.  Also, the meaning and accuracy of the figures contained in the document is unclear absent the declaration of a witness with personal knowledge of the same.  It, therefore, is not considered in evaluating the present motion.

### III.    ANALYSIS

#### A. First Cause of Action: Breach of Contract

Buehler asserts Nationstar elected to void the LMA, which by its terms, required that all terms of the original Promissory Note be reinstated as if the LMA had never existed.  (Dkt. No. 1-2 at 6.)  Buehler further alleges that in failing to revert to the terms of the Promissory Note, Nationstar incorrectly calculates the amount owed in arrears, both principal and interest, thereby resulting in higher charges.  (*Id*. at 6–7.)  Nationstar argues Buehler "misunderstand[s] the basic terms of the LMA" and that she "tries to confuse the court with her convoluted accounting of the applicable interest rate." (Dkt. No. 20 at 2.)  Nationstar notes that the "LMA explicitly provides the 4.854% interest rate only applied for *two years* from April 1, 2012 through to [sic] April 1, 2014, at which time the rate would return to 8.7%." (*Id*.)  And even though an 8.7% interest rate should apply after April 1, 2014, Nationstar "maintains the 4.854% has been in effect since Buehler defaulted" (*id*. at 3)—which would be contrary to the terms of the LMA even if in Buehler's benefit.

Undeniably, the various notices and payoff statements are confusing and taken together raise serious questions as to how Nationstar has calculated the amount Buehler owes.  For example, $1,496.32 was to be the *interest only* payment for the period from April 1, 2012, to

1    April 1, 2014. (Dkt. No. 1-2 at 17.) Yet several documents identify that post-April 1, 2014,

2    $1,496.32 was for monthly *principal and interest* and that a rate of 4.854% was being used to

3    calculate interest owing well past April 1, 2014. (*See id*. at 27–28; 30–33.)

4          Adding to the confusion is the Reinstatement Quote that identifies a "P&I Amt" of

5    $2,349.40 as of **May 1, 2012.** (*Id*. at 34.) Which would mean that as of May 1, 2012, Nationstar

6    was charging the payment owed under the terms of the original Promissory Note (*see* Dkt. No. 1-

7    2 at 14), thereby supporting Buehler's claim that after she defaulted on the first LMA payment,

8    "Nationstar elected to void the LMA and foreclose under the terms of the original note" (Dkt.

9    No. 1-2 at 6).

10          And adding even more confusion are the different Notices of Trustee's Sale which

11    identify amounts owing on certain dates that do not seem to correspond with the amounts

12    contained in the other documents.

13          It ultimately may be correct that an accountant can explain how the interest has been

14    calculated and how the amounts identified in the various documents accurately apply the terms

15    of the LMA and the Promissory Note. But at this stage of the litigation Buehler's simple math

16    (*see id*. at 26), together with the confusing statements, sufficiently supports her allegation that

17    Nationstar has miscalculated the interest and amounts owed, thereby breaching the terms of the

18    LMA or the Promissory Note, or both.

19          Nationstar argues even if there was an alleged breach of the LMA (or the Promissory

20    Note), such claim is time-barred by Washington's six-year statute of limitations. (Dkt. No. 13 at

21    11.) Nationstar notes "accrual of an action for breach of contract occurs on breach, not discovery

22    of the breach." (*Id*.) Because Buehler alleges the LMA was breached no later than the

23    November 19, 2013 Notice of Trustee's Sale, Buehler's breach of contract claim should be

24

barred. (*Id.*) Buehler responds that each month Nationstar claims an incorrect interest amount, "a new tolling date on the then [claimed] balance begins to run." (Dkt. No. 19 at 3.) Buehler further asserts that if nothing else, she should be able to assert an affirmative defense to the debt Nationstar seeks to enforce via a nonjudicial foreclosure sale. (*Id.*)

"[T]he six-year statute of limitations on an installment promissory note accrues for each monthly installment from the time it becomes due." *Cedar West Owners Ass'n v. Nationstar Mortg.*, LLC, 434 P.3d 554, 560 (Wash. 2019).[7] This rule applies to nonjudicial foreclosures on a deed of trust. *Id.* at 560 n.3. "Where there has been no explicit acceleration of the note, the statute of limitations does not run on the entire amount due and non-judicial foreclosure can be begun within the six years of any particular installment default and the amount due can be the then principal amount owing." *Id.* at 560 (quoting 18 William B. Stoebuck & John W. Weaver, *Washington Practice: Real Estate: Transactions* § 20.10, at 61 (2d ed. Supp. 2018)). Accordingly, as holder of the LMA and the Promissory Note, Nationstar benefits from this rule because it maintains the ability to initiate a lawsuit each time an installment payment is missed.

The Court is unaware of any authority preventing application of the installment promissory note accrual rule inversely on behalf of a borrower as Buehler suggests. If each installment payment Nationstar seeks to collect in its nonjudicial foreclosure is incorrectly calculated, the miscalculation occurs anew at each installment. Therefore, it logically follows that Buehler can claim a breach of the LMA/Promissory note after each incorrectly calculated installment payment.[8] Absent Nationstar identifying authority to the contrary, the Court can not

---

[7] Nationstar in *Cedar West* appears to be the same Nationstar involved in this case.

[8] There of course would be a limit because the present lawsuit was commenced on August 14, 2024 and Buehler could only claim a breach for each incorrectly calculated installment payment claimed as of August 14, 2018.

think of any reason why the installment promissory note accrual rule would not be applicable to Buehler's breach of contract claim.

In short, the Court concludes Buehler has adequately plead a breach of contract claim.

**B. Second Cause of Action: Violation of the Foreclosure Fairness Act (RCW 61.24.163(14)(c)) Permanent injunction restraining non-judicial foreclosure sale"**

Buehler's Complaint identifies the parties engaged in mediation and that they agreed the Property met the net present value test for purposes of Washington Revised Code § 61.24.163(14)(c). (Dkt. No. 1-2 at 7, 25.) Plaintiff further alleges Nationstar failed to take the necessary steps to offer Buehler an affordable loan modification. (*Id*. at 7–8.) In response, Nationstar points to a document outside of the pleadings (Dkt. No. 14-1 at 57–61), and which the Court has ruled it will not take judicial notice of,[9] to argue the Property did not meet the net present value test. (Dkt. No. 13 at 12.)

The Fairness Foreclosure Act provides:

> If an affordable loan modification is not offered in the mediation or a written agreement was not reached and the mediator's certification shows that the net present value of the modified loan exceeds the anticipated net recovery at foreclosure, that showing in the certification constitutes a basis for the borrower to enjoin the foreclosure.

Wash. Rev. Code § 61.24.163(14)(c).

Based on the signed mediation Session Summary dated January 28, 2018 (Dkt. No. 1-2 at 29), Buehler's complaint alleges a basis to enjoin the current trustee's sale pursuant to Washington Revised Code § 61.24.163(14)(c).

**C. Third Cause of Action: "Permanently Enjoin Trustee Sale"**

---

[9] *See supra* Section II.

**14** | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

1    Buehler's third cause of action identifies the relief Buehler requests—a permanent

2    injunction enjoining a trustee's sale and judicial intervention to determine what the loan

3    agreement is between the parties—but does not identify the legal basis to grant such relief.  (Dkt.

4    No. 1-2 at 8.)  Buehler, however, does identify the discrepancies amongst the various notices, the

5    payoff statements, and the Reinstatement Quote to support her request for court intervention to

6    declare the correct amount owing.  (*Id.* at 8–9; *see also supra* Section III.A.)

7    Nationstar argues "there is no need for this Court to determine the agreement between the

8    parties" because Nationstar opted not to terminate the LMA "leaving Buehler with a lower

9    interest rate and lower monthly payments for fourteen years."  (Dkt. No. 13 at 20.)  But

10    disregarding the terms of the LMA by applying an interest rate not agreed to would be a breach

11    of the LMA, with the potential effect on how the calculated monthly installment payment would

12    be applied to interest versus principal over the life of the debt being unclear at this time.  And, as

13    already stated, the Reinstatement Quote identifies a "P&I Amt" of $2,349.40 as of May 1, 2012

14    (Dkt. No. 1-2 at 34), calling into question whether Nationstar in fact graciously applied a "lower

15    interest rate and lower monthly payments for fourteen years."

16    In general, "[i]n a case of actual controversy within its jurisdiction . . . any court of the

17    United States, upon the filing of an appropriate pleading, may declare the rights and other legal

18    relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201.  Thus, even

19    though labeled as "Permanently Enjoin Trustee Sale," Buehler's third cause of action does

20    appear to allege a sufficient claim for declaratory relief.  (Dkt. No. 1-2 at 9.)

21    It also is evident from *Cedar West* that "lenders must strictly comply with [Washington

22    Deeds of Trust Act] and courts must strictly construe [the Deeds of Trust Act] in the borrower's

23    favor."  434 P.3d at 560–561 (quoting *Albice v. Premier Morg. Servs. Of Wash., Inc.*, 276 P.3d

24

1277 (Wash. 2012).  The Deeds of Trust Act contains numerous prerequisites to a trustee's sale,

including the requirement that an itemized accounting of all amounts owed be provided.  *See*

Wash. Rev. Code § 61.24.030(8)(d)–(e).  Thus, although Buehler's third cause of action is less

than explicit in identifying the basis for requesting injunctive relief, the Court cannot conclude

that amendment would be futile.  Buehler, therefore, is granted leave to amend the claim(s)

asserted in its third cause of action to clarify and identify the legal basis supporting her requests

for declaratory and injunctive relief.

**D.  Fourth Cause of Action: "Statute of Limitations Failure to Diligently Pursue Remedial Action"**

Based on the pleadings presented, the March 28, 2013 Notice of Default was the only

notice of default Nationstar ever issued; the subsequent trustee's sale notices all reference the

March 28, 2013 Notice of Default.  (*See* Dkt. No. 14-1 at 37–43, 45–47, 49–51, 53–55, 82–85.)

Buehler's complaint with the supporting documents identify there is an 11-year lapse between

the April 15, 2024 Notice of Trustee's Sale and the March 28, 2013 Notice of Default; close to a

six-year lapse between the April 15, 2024 Notice of Trustee's Sale and the July 8, 2018 Notice of

Trustee's sale; and close to a four-year lapse between the April 15, 2024 Notice of Trustee's sale

and July 8, 2020 (the date the prior Pierce County lawsuit was dismissed without prejudice).

(Dkt. No. 1-2 at 9–10.)  Buehler claims Nationstar's ability to recover installment payments is

now limited to those installment payments owed after April 1, 2018, because Nationstar's did not

diligently pursue its non-judicial foreclosure remedies.  (*Id*.)

Nationstar asserts the applicable statute of limitations on all installment payments has

been tolled to December 21, 2030, asserting that the default notice and each subsequent trustee's

sale notice tolled the statute of limitations as to all installment payments; thereby adding six

additional years each time a trustee's sale notice was issued.  (Dkt. No. 13 at 13–14.)

**16 |** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

In *Cedar West*, the borrower stopped making installment payments beginning June 1, 2010. 434 P.3d at 557. A default notice was issued on October 7, 2015, followed by a trustee's sale notice on October 18, 2016. *Id*. at 558. The lender (Nationstar) conceded it had not taken "any steps to pursue nonjudicial foreclosure for over a year after the notice of default was transmitted to the borrower." *Id*. at 562. The court held "that after filing a notice of default, the lender must act diligently to pursue and perfect nonjudicial foreclosure remedies under the [Deeds of Trust] Act." *Id*. at 562. The court identified that "[w]hen the nonjudicial foreclosure action tolls the statute of limitations is a factual inquiry." *Id*. It then concluded,

> Because of this unexplained delay and consistent with the statutory right to notice of the amount in default and the right to reinstate and cure, under the circumstances of this case, we conclude the Notice of Trustee's Sale and not the notice of default tolled the statute of limitations. Because the statute of limitations begins to run on each installment payment from the date it is due, Nationstar is entitled to foreclosure on installment payments due on and after November 1, 2010.

*Id*. at 562–63 (emphasis added). Thus, neither the default notice nor the trustee's sale notice added an additional six-years to file a claim from the date of each notice. Instead, Nationstar was precluded from claiming installment payments owed more than six years *prior* to the October 16, 2016 Notice of Trustee's Sale.

Here, Buehler's complaint and attached documents allege that an unexplained period of time passed between various events and the April 15, 2024 Notice of Trustee's Sale. Accordingly, Buehler's complaint raises a factual dispute as to whether Nationstar acted diligently in pursuing nonjudicial foreclosure. This in turn raises a question as to which installment payments prior to the April 15, 2024 Notice of Trustee's Sale can be included in the nonjudicial foreclosure.

**17 |** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

1    **E. Fourth (the second one) and Fifth Causes of Action: "Nationstar breached its**
2    **statutory duty of good faith and fair dealing And Violated the Washington State**
      **Consumer Protection Act" and "Consumer Protection Act Violation."**

3        As with others, these causes of action are not models of clarity.  For the "second" fourth

4    cause of action, Buehler appears to allege a Washington State Consumer Protection Act (CPA)

5    claim based on an alleged violation of the Washington Consumer Loan Act (CLA).  (Dkt. No. 1-

6    2 at 11–13.)  Buehler also seeks injunctive relief.  (*Id*. at 12.)  Buehler claims the terms of the

7    LMA were "unfair and deceptive short-terms, interest only mortgage modifications . . . without

8    consider[ation of Buehler's] ability to repay the mortgage debt over the life of the modified

9    loan." (*Id*.)

10       For the fifth cause of action, Buehler alleges false and misleading practices in offering

11   the LMA and for allegedly failing to mediate in good faith.  (*Id*. at 12–13.)  Buehler further

12   claims such conduct amounts to per se violations of the CPA.  (*Id*. at 12.)

13       Nationstar asserts the CLA does not provide a private cause of action (Dkt. No. 13 at 15),

14   but Buehler does not assert a standalone CLA claim.  Rather, the claimed CLA violations are

15   alleged in support of a CPA claim, which would be an actionable claim.  *See Russell v. WADOT*

16   *Cap., Inc.*, No. C22-0531JLR, 2024 WL 4665566, at *20 (W.D. Wash. Oct. 9, 2024) ("Because

17   the WCLA does not provide a private right of action, Mr. Russell's claim for violations of the

18   WCLA is cognizable only under the WCPA.").

19       Nevertheless, Nationstar argues "[e]ven if Buehler brought her CLA violation as a

20   predicate for a claim under the CPA, her claim would be time barred."  (Dkt. Nos. 20 at 4; *see*

21   *also* Dkt. No. 13 at 19.)  Thus, because "Buehler alleges Nationstar engaged in deceptive

22   practices in 2012 and that she was harmed in 2013, [her CPA claim became] stale by 2017." (*Id*.

23   at 5.)  Similarly, if the claimed CLA violation is predicated on the January 29, 2018 mediation,

24

**18** | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS

1   then the CPA claim would be barred as of January 29, 2022.  (Dkt. No. 13 at 19.)  Buehler did

2   not respond to the statute of limitations argument.

3       A CPA claim is "forever barred unless commenced within four years after the cause of

4   action accrues[.]"  Wash. Rev. Code § 19.86.120.  Generally, a "cause of action accrues and the

5   statute of limitations begins to run when a party has the right to apply to a court for relief."

6   *Shepard v. Holmes*, 345 P.3d 786, 790 (2014).  If the discovery rule applies, "a cause of action

7   accrues when the plaintiff, through the exercise of due diligence, knew or should have known the

8   basis for the cause of action."  *Id*.  Whether the discovery rule applies to a CPA claim based on a

9   CLA violation was not briefed by the parties.

10      Here, Buehler's CPA claim based on alleged CLA violations appears premised on (1)

11  events occurring at the time the LMA was entered into, which would have been in 2012, and (2)

12  the January 28, 2018, mediation.  These exact allegations were previously asserted in the

13  November 5, 2018, Pierce County lawsuit.  (*See* Dkt. No. 14-1 at 69–70.)  Thus, even assuming

14  the discovery rule applies to Buehler's CPA claims, it is clear Buehler's CPA claims accrued no

15  later than the filing of Pierce County lawsuit and became barred as of November 5, 2022.

16      Accordingly, Plaintiff's CPA claims are DISMISSED with prejudice.

17                          **III    CONCLUSION**

18      Having considered Defendants' motion, the briefing of the parties, and the remainder of

19  the record, the Court finds and ORDERS that Defendants' motion for judgment on the pleadings

20  (Dkt. No. 13) is DENIED IN PART and GRANTED IN PART, with leave to amend.

21      1.  Plaintiff's Washington Consumer Protection Act claims are DISMISSED with

22          prejudice.

23

24

2.  Plaintiff is granted leave to amend to clarify her third cause of action in which she requests declaratory and injunctive relief.

3.  All other relief Defendants request is DENIED.

Dated this 10th day of December, 2024.

David G. Estudillo
United States District Judge