1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
9                                 AT TACOMA

10

11      DONNA BUEHLER,                          CASE NO. 3:24-cv-05759-DGE

                        Plaintiff,              ORDER GRANTING IN PART
12           v.                                 AND DENYING IN PART
                                                DEFENDANTS' MOTION FOR
13      NATIONSTAR MORTAGE LLC et al.,           SUMMARY JUDGMENT (DKT.
                                                NO. 31)
14                      Defendants.

15

16

17          This matter comes before the Court on Defendants' motion for summary judgment.  (Dkt.

18  No. 31.)  After reviewing the record and the parties' briefing, the Court GRANTS in part and

    DENIES in part Defendants' motion for the reasons discussed herein.
19

20

21

22

23

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 1

1

**I    BACKGROUND**

2          This case arises out of a loan dispute between Plaintiff and Defendant Nationstar

3    Mortgage LLC[1] ("Nationstar") that goes back over a decade.

4          On January 5, 2007, Plaintiff obtained a loan to purchase her residence from Nationstar in

5    the amount of $300,000, with a fixed interest rate of 8.7%.  (Dkt. Nos. 33 at 2; 33-1.)  The loan

6    was secured by a note and deed of trust.  (Dkt. Nos. 33-1, 33-2.)  Monthly principal and interest

7    payments on the loan were set at $2,349.40.  (Dkt. No. 33-1 at 2.)  Plaintiff stopped making

8    payments on the loan in September 2010.  (Dkt. Nos. 33 at 2; 33-3 at 22.)

9          To resolve Plaintiff's defaulted note, on March 31, 2012, a Loan Modification Agreement

10   ("LMA") was executed whereby Plaintiff agreed to pay an unpaid principal balance of

11   $369,918.11; this amount being comprised of unpaid loan amounts plus interest and other

12   amounts capitalized as of May 1, 2012.  (Dkt. Nos. 33 at 2; 33-4.)  Pursuant to the LMA,

13   Plaintiff would make interest only payments for the period between April 1, 2012 and April 1,

14   2024 in the amount of $1,496.32.  (Dkt. No. 33-4 at 2.)  Thereafter, the interest rate would revert

15   to the 8.7% interest rate charged in the original note.  (*Id*.)  In the event of default of the LMA,

16   Nationstar had the option to terminate the LMA and reinstate the terms of the original note.  (*Id*.)

17   Plaintiff made a "qualifying payment" of $1,495.32[2] to enter into the LMA.  (Dkt. Nos. 32-4 at

18   3; 33-5 at 2.)

19

20

_____

21   [1] Defendant Bank of New York Mellon is the formal owner and beneficiary of Plaintiff's loan
     secured by a deed of trust.  (Dkt. No. 29 at 2.)  Pursuant to a Pooling and Servicing Agreement,
22   Nationstar is acting as beneficiary of the trust.  (*Id*.)  Defendant Quality Loan Service
     Corporation intends to conduct a non-judicial foreclosure of Plaintiff's property.  (*Id*.)

23   [2] There is a one-dollar difference between the amount Plaintiff asserts she paid as the qualifying
     payment and that which Nationstar identifies as the qualifying payment amount.
24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 2

1    Plaintiff asserts Defendant Quality Loan Service Corporation ("Quality Loan"), the

2 Trustee of the Deed of Trust, told Plaintiff via email that Nationstar had elected to void the

3 LMA.  (Dkt. No. 32-4 at 3.)  A copy of this alleged email is not included as part of the record.

4 Instead, a declaration from Quality Loan's general counsel identifies Quality Loan has

5 repeatedly informed Plaintiff that it is not authorized to speak on behalf of Nationstar.  (Dkt. No.

6 34 at 2.)

7    Plaintiff has not tendered any payments to Nationstar since April 2012.  (Dkt. Nos. 32 at

8 1–2; 32-3 at 7.)  The unpaid principal balance owed to Nationstar was $369,918.11 as of May 1,

9 2012.  (Dkt. No. 32-3 at 9.)  Plaintiff has not paid property taxes or hazard insurance coverage

10 premiums for her residence since March 1, 2012.  (*Id*. at 11.)

11    Plaintiff filed for Chapter 13 bankruptcy on March 30, 2012.  (Dkt. Nos. 32 at 2; 32-5.)

12 Plaintiff converted her bankruptcy from a Chapter 13 bankruptcy petition to a Chapter 7

13 bankruptcy on June 5, 2012.  (Dkt. No. 32-6.)  On September 11, 2012, the stay was lifted as to

14 enforcement of the deed of trust securing Plaintiff's loan.  (Dkt. No. 32-9.)

15    On March 28, 2013, Nationstar caused a Notice of Default to be served on Plaintiff for

16 failure to make payments required by the LMA.  (Dkt. Nos. 33 at 3; 33-6.)  Defendants have

17 filed five separate notices of trustee sale: the first on November 19, 2013, for a sale on April 4,

18 2014; the second on October 20, 2016, for sale on February 24, 2017; the third on June 14, 2017,

19 for a sale on October 20, 2017; the fourth on July 9, 2018, for a sale on November 16, 2018; and

20 the fifth April 15, 2024, for sale on August 23, 2024.  (Dkts. No. 33 at 3–4; 33-7 through 33-11.)

21 Plaintiff has remained in possession of the home.

22

23

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 3

1    Between 2014 and 2018, Plaintiff submitted five loan modification applications to

2    Nationstar that sought alternatives or assistance to repay the outstanding loan balance.  (Dkt.

3    Nos. 33 at 4; 33-12 through 33-16.)  No modifications to the LMA have been granted.

4    The parties engaged in two mediation sessions on October 23, 2017 and January 29,

5    2018.  (Dkt. Nos. 33 at 4; 33-16 at 11.)  Although mediation was unsuccessful, the mediator

6    certified the parties engaged in good faith mediation.  (Dkt. Nos. 33 at 4; 33-16 at 12.)  Plaintiff

7    then filed a complaint in state court on November 6, 2018 seeking to enjoin the trustee's sale of

8    the property.  (Dkt. No. 32-10.)  A preliminary injunction was entered and remained in effect

9    from January 25, 2019 to July 8, 2020.  (Dkt. Nos. 32-11; 32-12.)  That lawsuit was dismissed

10    without prejudice on July 8, 2020.  (Dkt. No. 32-12.)

11    Plaintiff initiated the present litigation in state court on August 15, 2024.  (Dkt. No. 1 at

12    2.)  The case was removed to federal court on September 9, 2024.  (*Id*.)  Currently before the

13    Court is Plaintiff's amended complaint stating four claims: first, a breach of contract claim;

14    second, a claim for violations of the Foreclosure Fairness Act (FFA); third, a request for

15    declaratory relief; and fourth, a claim Nationstar failed to diligently pursue a nonjudicial

16    foreclosure.  (Dkt. No. 29.)  Defendants moved for summary judgment on all four claims.  (Dkt.

17    No. 31).  The motion has been fully briefed.  (*See* Dkt. Nos. 37, 42.)

18                              **II      DISCUSSION**

19      **A.  Legal Framework**

20    Defendants moved for summary judgment under Federal Rule of Civil Procedure 56.

21    (Dkt. No. 31 at 7.)  Summary judgment is proper only if the pleadings, the discovery and

22    disclosure materials on file, and any affidavits show there is no genuine issue as to any material

23    fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 4

1    moving party is entitled to judgment as a matter of law when the nonmoving party fails to make

2    a sufficient showing on an essential element of a claim in the case on which the nonmoving party

3    has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

4        There is no genuine issue of fact for trial where the record, taken as a whole, could not

5    lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith*

6    *Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant

7    probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e).  A

8    moving party can use an "absence of evidence" by the nonmoving party to show no genuine

9    issue of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conversely, a genuine

10   dispute over a material fact exists if there is sufficient evidence supporting the claimed factual

11   dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Id*. at 253; *T.W.*

12   *Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

13       The determination of the existence of a material fact is often a close question.  The court

14   must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

15   e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, T.W. *Elect.*

16   *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

17   of the nonmoving party only when the facts specifically attested by that party contradict facts

18   specifically attested by the moving party.  The nonmoving party may not merely state that it will

19   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

20   to support the claim.  *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson,*

21   *supra*).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

22   will not be "presumed."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

23

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 5

1   **B. Plaintiff's first, second, and fourth causes of action for breach of contract, violations**

2   **of the Foreclosure Fairness Act, and "failure to diligently pursue a remedial action"**

3   **are abandoned.**

4       Plaintiff's response to Defendants' motion for summary judgment explicitly

5   acknowledges her "third cause of action for declaratory relief is a key to resolution." (Dkt. No.

6   37 at 1.) Plaintiff's six-page response does not discuss any of her other claims. The Ninth

7   Circuit treats a plaintiff's failure to oppose a defendant's argument for summary judgment as

8   abandonment of the disputed claim. *Est. of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th

9   Cir. 2011); *Shakur v. Schiro*, 514 F.3d 878, 892 (9th Cir. 2008); *Jenkins v. Cnty. of Riverside*,

10  398 F.3d 1093, 1095 n.4 (9th Cir. 2005). Accordingly, Plaintiff's first cause of action for breach

11  of contract, second cause of action for violations of the Foreclosure Fairness Act, and fourth

12  cause of action for failure to diligently pursue a remedial action are treated as abandoned.

13  Defendants' motion for summary judgment on all three counts is GRANTED.

14  **C. Regarding the third cause of action, there are genuine disputes of fact over whether**

15  **$2,681.91 of accrued interest was properly attributed to Plaintiff and whether the**

16  **2013 Notice of Default complied with Washington Revised Code § 61.24.030.**

17      Plaintiff's third cause of action requests court intervention to "determine what the loan

18  agreement is between the parties." (Dkt. No. 29 at 11.) Plaintiff requests the Court order a new

19  Notice of Default be issued based on either of the following errors: (1) a general argument

20  Nationstar has improperly calculated her interest under the LMA and (2) a specific claim there is

21  a $2,681.91 charge that was unknown until the summer of 2025 and required to be included in

22  the Notice of Default. (Dkt. Nos. 29 at 7–10; 37 at 2.) Plaintiff also requests the Court, if there

23  is an error necessitating a new Notice of Default, "further determine when tolling of the statute

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 6

1    of limitation occurs, and at what point are monthly payments barred from enforcement action."

2    (Dkt. No. 37 at 2.)

3        Plaintiff's first argument that Nationstar improperly calculated her interest rate raises no

4    genuine issue of material fact.  Plaintiff suggests the LMA may have been terminated.  Plaintiff

5    also alleges Nationstar has been "charg[ing] the Note rate of interest (8.7%) from the first default

6    forward," despite being required to charge the lower rate of 4.854% for the first two years.  (Dkt.

7    No. 29 at 5, 8.)  Even assuming Plaintiff did not waive this argument by raising only the issue of

8    the $2,681.91 charge in her response to Defendants' motion for summary judgment, neither has

9    any merit.

10        First, Nationstar did not terminate the LMA.  The LMA could—but was not required to—

11   be terminated when Plaintiff defaulted on the loan.  (Dkt. No. 33-4 at 2.)  Plaintiff believes the

12   LMA was terminated because of alleged email communications with a representative from

13   Quality Loan Services.  (Dkt. No. 32-4 at 3.)  But Plaintiff does not rebut the fact the individual

14   who communicated with her was a representative of Quality Loan Services, not Nationstar.

15   (Dkt. No. 34 at 1.)  Plaintiff also does not rebut this Quality Loan Services representative

16   informed her and her attorney he was "not authorized to speak on [Nationstar's] behalf."  (*Id*. at

17   2.)  In contrast, individuals from Nationstar state they did not terminate the LMA.  (Dkt. No. 33

18   at 3.)  Accordingly, there is no genuine dispute.  The LMA remains in effect.

19        Second, Defendant charged the interest she owed under the terms of the LMA.  The

20   central dispute ultimately comes down to the fact that Defendants sent Plaintiff statements

21   identifying the interest rate "from 4/01/12 to 8/11/25 [was] 4.854%," even though Defendants

22   explain the rate increased to 8.7% after the Interest Only Period ended and the 4.854% figure

23   merely "refers to the interest rate applicable to the oldest past due installment."  (Dkt. Nos. 33 at

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 7

1    5; 33-18 at 2.)  Nationstar provides an explanation on how the interest was calculated, which

2    Plaintiff fails to rebut.  Ultimately, while Nationstar could perhaps have been clearer about what

3    Plaintiff was being billed, there is no genuine dispute as to the LMA's terms.  Plaintiff was

4    charged an interest rate of 4.854% during the Interest Only period and an interest rate of 8.7%

5    after the Interest Only period ended.

6         However, there are genuine issues of material fact regarding the allegedly previously

7    unknown $2,681.91 charge and the 2013 Notice of Default.[3]  First, there is a genuine issue of

8    material fact over whether Nationstar's $2,681.91 charge is proper under the terms of the LMA.

9    Defendants identify this charge as representing "interest accrued prior to April 1, 2012 that was

10   not capitalized."  (Dkt. No. 33 at 5.)  However, the LMA entered into on March 31, 2012

11   identifies that as of May 1, 2012, the principal balance identified therein "consist[ed] of the

12   unpaid amount[s] loaned to Borrower by Lender ***plus any interest*** and other amounts

13   capitalized."  (Dkt. No. 33-4 at 2) (emphasis added).  This language could be interpreted to

14   include all interest owing through May 1, 2012.  If interpreted this way, Nationstar's attempt to

15   assess this interest charge is barred by the LMA.  Viewing the facts in the light most favorable to

16   the Plaintiff, this interpretation would be reasonable because Plaintiff identifies she was never

17   aware of this charge and the present record is void of any evidence indicating Plaintiff and

18   Nationstar previously discussed this interest amount at the time they executed the LMA.

19

20

21   _____
     [3] Defendants argue any claim about this charge is either time-barred or barred by the Court's
22   dismissal of Plaintiff's Washington Consumer Protection Act claim.  (Dkt. No. 42 at 5.)
     However, these claims are based on the Washington Deeds of Trust Act and principles of
23   contract interpretation, not the Consumer Protection Act.  Additionally, for the same reasons the
     Court finds Defendants are not necessarily barred by the statute of limitations from bringing
24   claims under the 2013 Notice of Default, Plaintiff is not barred from challenging the Notice.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 8

1    There is also a separate genuine dispute of material fact about the validity of the Notice

2  of Default.  Plaintiff argues the Notice of Default is defective because it does not include a newly

3  disputed charge of $2,681.91.  (Dkt. No. 37 at 4.)  Plaintiff alleges the Washington Deeds of

4  Trust Act, Washington Revised Code § 61.24.030, required Defendants include this charge in the

5  Notice of Default.  (*Id*. at 2–4.)  Because Defendants did not include it, the Notice may be

6  defective, and a new Notice of Default may be required.  (*Id*. at 5–6.)  Regardless, however, the

7  validity of the Notice of Default involves an even more fundamental issue.

8    Because the Washington Deeds of Trust Act "'dispenses with many protections

9  commonly enjoyed by borrowers under judicial foreclosures, lenders must **strictly comply** with

10  the statutes and courts must **strictly construe** the statutes in the borrower's favor.'"  *Cedar West*

11  *Owners Ass'n v. Nationstar Mortg., LLC*, 434 P.3d 554, 486 (Wash. Ct. App. 2019) (emphasis

12  added) (quoting *Albice v. Premier Mortg. Servs. of Wash., Inc.*, 276 P.3d 1277, 1281 (2012)).

13    Admittedly, Plaintiff's response briefing leaves much to be desired, but it does assert that

14  the Notice of Default is "incorrect and that Nationstar should not be allowed to rely on it" (Dkt.

15  No. 37 at 4); that Nationstar was required to comply with Washington Revised Code § 61.24.030

16  (*id*. at 2–3); and that the Notice of Default contained misleading accounting (*id*. at 5).

17  Comparing the Notice of Default with the requirements of Washington Revised Code

18  § 61.24.030, the Court concludes there is a genuine issue of material fact whether the Notice of

19  Default complies with the statute.

20    The Deeds of Trust Act requires, among other things, (1) "[a]n itemized account of the

21  amount or amount in arrears if the default alleged is failure to make payments," (2) "[an]

22  itemized account of all other specific charges, costs, or fees that the borrower, grantor, or any

23  guarantor is or may be obliged to pay to reinstate the deed of trust before the recording of the

24

1  notice of sale;" and (3) "[a] statement showing the total of" these two accounts "designated

2  clearly and conspicuously as the amount necessary to reinstate the note and deed of trust before

3  the recording of the notice of sale."  Wash. Rev. Code § 61.24.030(8)(d)-(f).  It is this third

4  requirement that gives the Court pause.

5       The Notice of Default contains a "Statement of Default and Itemized Arrearages" with an

6  itemized list of 11 payments of $1,496.32 for a total of $16,459.62.  Added to this amount are

7  itemized amounts for "accrued late charges" and a "corporate advance breakdown", with a "total

8  default" amount of $21,013.28.  (Dkt. No. 33-6 at 3.)  The Notice of Default also contains a

9  section for "Other Charges, Costs, and Fees" with an additional $2,162.00 of estimated charges

10 that Plaintiff "[is] or may be obliged to pay" if "reinstatement is made before recording of the

11 Notice of Trustee's Sale."  (*Id.*)  What appears to be missing, however, is "[a] statement showing

12 the total of" these two accounts "designated clearly and conspicuously as the amount necessary

13 to reinstate the note and deed of trust before the recording of the notice of sale."  The "total

14 default" amount fails to include these additional charges, costs, and fees.  Because lenders must

15 ***strictly comply*** with the Deeds of Trust Act and courts must ***strictly construe*** such act in the

16 borrower's favor, there is a genuine dispute of material fact over whether the Notice of Default

17 complies with the Washington Revised Code § 61.24.030(8)(f).

18      As a result of these two genuine disputes of material facts, Defendants' motion for

19 summary judgment on Plaintiff's cause of action for declaratory relief is DENIED.

20      While these two issues of material fact require Defendants' motion for summary

21 judgment on this cause of action be denied, no payments will be barred by the statute of

22 limitations in the event the $2,681.91 charge is in error and/or the Notice of Default is declared

23 defective.  Promissory notes and deeds of trust are subject to a six-year statute of limitations.

24

1    *Cedar West*, 434 P.3d at 559.  This statute of limitations is tolled by the commencement of a

2    non-dilatory foreclosure proceeding or by bankruptcy proceedings.  *Id*. at 562; *see also Wean v.*

3    *US Bank Nat'l Ass'n*, No. C19-1630 MJP, 2019 WL 6498115, at *2 (W.D. Wash. Dec. 3, 2019).

4    The statute of limitations is also restarted—not just tolled—by an acknowledgment of the debt.

5    *Jewell v. Long*, 876 P.2d 473, 474 (1994).  Applying for assistance constitutes an

6    acknowledgement of the debt, if the plaintiff acknowledges the debt, communicates the

7    acknowledgement to the creditor, and does not indicate an intent not to pay.  *Thacker v. Bank of*

8    *New York Mellon*, No. 18-5562 RJB, 2019 WL 1163841, at *6 (W.D. Wash. Mar. 13, 2019),

9    aff'd, 787 F. App'x 474 (9th Cir. 2019); *Wean*, 2019 WL 6498115, at *3.

10        Plaintiff repeatedly applied for assistance and restarted her date.  Most recently, Plaintiff

11    submitted a Uniform Borrower Assistance Form on August 26, 2018.  (Dkt. Nos. 33 at 4; 33-16.)

12    In this form, Plaintiff acknowledges needing "mortgage relief."  (*Id*. at 5.)  Plaintiff also

13    communicated this need to Nationstar.  While Nationstar does not provide a specific receipt, they

14    do provide evidence they received the multiple applications, including this application, "between

15    2014 and 2018."  (Dkt. No. 33 at 4.)  This is sufficient to show Defendants received the

16    acknowledgement of debt.  Plaintiff also did not indicate any intent not to make payments.

17    Therefore, the statute of limitations for the May 1, 2012, default restarted on August 26, 2018, to

18    extend through August 26, 2024.  It was further tolled for 530 days for the preliminary injunction

19    in state court (Dkt. No. 33 at 4), extending the date to February 7, 2026.[4]  Accordingly, even if a

20    new Notice of Default is required, Plaintiff would not be able to bar Defendants' attempted

21    recovery of any of her delinquent payments under the statute of limitations.

22

23    [4] Defendants argue further even if the restarting dates did not apply, Defendants would not be
      time-barred because of tolling.  (Dkt. No. 31 at 25–29.)  Because the Court accepts Defendants'
      argument on restarting, it does not consider this tolling claim.

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 11

1

**III    ORDER**

2      Having considered Defendants' motion, the briefing of the parties, and the remainder of

3   the record, the Court finds and ORDERS that Defendants' motion for summary judgment (Dkt.

4   No. 31) is GRANTED in part and DENIED in part.  Defendants are granted summary judgment

5   on Plaintiff's first, second, and fourth causes of action.  Defendants are also granted summary

6   judgment on Plaintiff's third cause of action (1) to the extent Plaintiff alleges Defendants

7   charged interest rates other than 4.854% for the Interest Only period and 8.7% after the Interest

8   Only period or (2) to the extent Plaintiff seeks to prevent Defendants from pursuing foreclosure

9   based on the statute of limitations.  Defendants are denied summary judgment on Plaintiff's third

10   cause of action for declaratory relief to the extent Plaintiff challenges the facial legitimacy of the

11   2013 Notice of Default or any cost related to the apparent $2,681.91 charge for interest allegedly

12   incurred prior to April 1, 2012.

13      Dated this 14th day of October, 2025.

14

15

16                                    David G. Estudillo
                                       United States District Judge

17

18

19

20

21

22

23

24

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (DKT. NO. 31) - 12