UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA BUEHLER,

Plaintiff,

v.

NATIONSTAR MORTAGE LLC et al.,

Defendants.

CASE NO. 3:24-cv-05759-DGE

ORDER DENYING PLAINTIFF'S MOTION FOR RELIEF UNDER RULE 60(B)(6) (DKT. NO. 58), GRANTING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 73)

Plaintiff asks the court to reinstate two previously dismissed claims arguing her prior counsel was ineffective and failed to communicate with her. Meanwhile, Defendants seek summary judgment on Plaintiff's remaining claim. For the reasons stated herein, the Court DENIES Plaintiff's motion for relief from judgment (Dkt. No. 58) and GRANTS Defendants' second motion for summary judgment (Dkt. No. 73).

## I BACKGROUND

The underlying facts and procedural background of this case are identified in the Court's October 14, 2025 Order. (Dkt. No. 44 at 2–4). That Order dismissed Plaintiff's claims for

breach of contract (Count I), violations of the Foreclosure Fairness Act (Count II), and failure to diligently pursue remedial action (Count IV). (*Id.* at 12.) At the same time, the Order identified two remaining claims for trial, which were defined as follows:

> Defendants are denied summary judgment on Plaintiff's third cause of action for declaratory relief to the extent Plaintiff challenges the facial legitimacy of the 2013 Notice of Default or any cost related to the apparent $2,681.91 charge for interest allegedly incurred prior to April 1, 2012.

(*Id.*)

On October 30, 2025, the Court granted prior counsel's request to withdraw. (Dkt. No. 47.)[1] The Court also granted Plaintiff time to find new counsel and continued trial. (*Id.*) Plaintiff's new counsel, Donna Johnston, appeared on February 4, 2026. (Dkt. No. 50.)[2] Over the course of several months, the Parties attempted without success to resolve the remaining issues. (*See, e.g.*, Dkt. Nos. 52, 56.)

Meanwhile, on November 12, 2025, Defendants issued Petitioner a new Notice of Default. (Dkt. No. 74 at 6–9.) Also, in May 2026, Defendants waived the $2,681,91 charge for uncapitalized interest that accrued prior to April 1, 2012. (*Id.* at 2.) The Parties agree that "the issuance of the [November 12, 2025] Notice of Default resolves the dispute regarding the 2013 Notice of Default's compliance with RCW § 61.24.030(8)(f)." (Dkt. No. 52 at 2.) The Parties further agree that with the waiver of the $2,681.91 interest charge, such "waiver resolves the issue identified in the Court's [October 2025] summary judgment order." (Dkt. No. 56 at 2.)

---

[1] Plaintiff's prior counsel submitted his motion to withdraw one day prior to the Court's Order on Defendants' motion for summary judgment. (Dkt. No. 43.)

[2] Johnston recently filed a motion to withdraw as counsel on August 4, 2026. (Dkt. No. 79.)

Because the two outstanding issues identified in the Court's October 2025 Order are now resolved, Defendants ask the Court to dismiss on summary judgment this litigation. (Dkt. No. 73.)

Plaintiff does not dispute the two issues identified in the Court's October 2025 Order have been resolved; instead, she argues the Court should reinstate her claims for breach of contract (Count I) and for "failure to diligently pursue a remedial action" (Count IV). (Dkt. No. 77; *see also* Dkt. No. 58.) In support of her request to reinstate these two claims, Plaintiff asserts that the "illness of her attorney" constitutes an extraordinary circumstance justifying relief under Federal Rule of Civil Procedure 60(b)(6). (Dkt. No. 58 at 5–6.) Plaintiff claims her attorney "abandon[ed] the three counts of the Complaint that the Court dismissed" without Plaintiff's authority and that he otherwise failed to communicate with her about the litigation. (*Id*. at 4.) Plaintiff further asserts her prior attorney failed to engage in discovery and failed to "obtain the services of a forensic accountant to examine the basis for the numerical calculations" Defendants presented to her and to the Court. (*Id*. at 6–7.) Plaintiff also asserts that the "simple calculations" she attached to her declaration "show significant discrepancies between the figures supplied by Defendants in their payoff statements and the figures she produced." (*Id*. at 7.) The calculations she provides appear to have been produced by a program known as ChatGPT. (*See* Dkt. No. 58-1 at 12–18.) Finally, Plaintiff asserts she is "entitled to obtain discovery from Defendants to further buttress [the] charge" that "Defendants were not acting in good faith during the mediation in 2018." (Dkt. No. 58 at 8.)

## II DISCUSSION

### A. Motion for Relief from Judgment (Dkt. No. 58)

Plaintiff asks the Court to reinstate two claims pursuant to Federal Rule of Civil Procedure 60(b)(6). Rule 60(b)(6) is referred to as the "catch-all" provision of Rule 60(b) because it covers "any other reason that justifies relief." This provision "does not apply to situations 'covered by any of the other reasons set forth in Rule 60.'" *Marroquin*, 112 F.4th at 1217 (quoting *Delay v. Gordon*, 475 F.3d 1039, 1044 (9th Cir. 2007)). The Ninth Circuit has stated that:

> Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment. A party seeking to re-open a case under Rule 60(b)(6) must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion.

*Delay*, 475 F.3d at 1044 (internal citations and quotations omitted).

Defendants argue that the status quo does not create "manifest injustice," and the circumstances do not call for the equitable remedy of 60(b)(6) because "[t]he substantive issues underlying [the two previously dismissed counts] were fully considered and resolved" and "reinstatement of either count would serve no purpose other than to relitigate issues this Court has already decided." (Dkt. No. 61 at 9.)

The overarching issue in this litigation is whether Defendants can proceed with a nonjudicial foreclosure based on a Notice of Default previously served on Plaintiff.[3] Plaintiff challenges the process by which Defendants calculated her balance and initiated foreclosure.

---

[3] It is noted that Plaintiff faces difficult circumstances in seeking to pursue this litigation. She does not dispute Defendants' characterization that for approximately 14 years, "Plaintiff has remained in her home without making a single loan payment while Defendants have continued to advance taxes, insurance, and other carrying costs on her behalf." (Dkt. No. 61 at 1.) Notably, nowhere in Plaintiff's motion or her reply does she ever suggest that she made any payments over the past 14 years or that she is able to bring the loan current. It, therefore, is undisputed that Plaintiff is in arrears.

The Court previously concluded the only questions of fact related to a $2,681.91 interest charge Defendants included in the balance owing and how the total balance was identified in the 2013 Notice of Default. (Dkt. No. 44 at 12.) Importantly, however, the Court rejected Plaintiff's argument that Defendants terminated the Loan Modification Agreement ("LMA") and also concluded that Defendants provided "an explanation on how the interest was calculated, which Plaintiff fail[ed] to rebut." (*Id*. at 7–8.)

Plaintiff does not identify any evidence challenging the Court's prior conclusions, which is necessary to support a finding that Plaintiff suffered injury in the prosecution or defense of her legal claims. In support of reviving her breach of contract claim, Plaintiff suggests only that it "would have been a normal procedure for [her prior attorney] to obtain the services of a forensic accountant to examine the basis for the numerical calculations supplied in the various payoff statements served upon Ms. Beuhler (sic) through the Notices of Default." (Dkt. No. 58 at 6–7.) However, Plaintiff does not provide an analysis from a forensic accountant or any other credible evidence that calls into question Defendants' calculations. Instead, Plaintiff attaches "simple calculations" to her declaration that purportedly "show significant discrepancies between the figures supplied by Defendants in their payoff statements and the figures [Plaintiff] produced." (*Id*. at 7.) The genesis of these "simple calculations" is unclear as it appears ChatGPT was used to produce these "simple calculations." There is no explanation as to what information was given to ChatGPT, who provided such information, or under what circumstances the Rules of Evidence would allow the Court to accept "simple calculations" from ChatGPT to evaluate the merits of her claims. (*See* Dkt. No. 58-1 at 12–18.)

Similarly, in support of reviving her "failure to diligently pursue remedial action" claim, Plaintiff asserts only that "[t]he Washington Supreme Court has held that a delay from October

7, 2015 to October 18, 2016 between when the lender transmitted the Notice of Default to their recording of the Notice of Trustee's sale was sufficient to preclude the lender from foreclosing on loan installments prior to the six years before the recording of the Notice of Trustee's sale and not those before the Notice of Default" and "there is evidence that Defendants were not acting in good faith during the mediation in 2018." (Dkt. No. 58 at 7–8.) However, the Court previously dismissed Plaintiff's statute of limitations argument and found the mediator certified the parties engaged in good faith mediation. (*See* Dkt. No. 58 at 4, 10–11.) Plaintiff provides no new evidence nor argument entitling her to relief.

At best, Plaintiff's motion speculates that her attorney's prior decisions in this case may have caused her injury. Without more, however, the Court finds no basis to conclude manifest injustice has occurred or that extraordinary circumstances prevented Plaintiff from taking timely action to prevent an erroneous judgment.

Plaintiff's motion for relief from judgment under Rule 60(b)(6) is DENIED.[4]

**B. Motion for Summary Judgment (Dkt. No. 73)**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

---

[4] Defendants also argue Plaintiff's motion for relief from judgment should be denied as untimely (Dkt. No. 61 at 3–4) and because her prior counsel's actions did not meet the required virtual abandonment standard (*id*. at 4–9). As the Court finds Plaintiff fails to establish manifest injustice or extraordinary circumstances, the Court does not address these arguments.

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc*., 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

As already identified, the Court previously concluded the only questions of fact related to the facial legitimacy of Defendants' Notice of Default and a $2,681.91 interest charge Defendants included in the balance owing. (Dkt. No. 44 at 12.)

But since the prior Court's prior Order, Defendants have served a new Notice of Default on Plaintiff and have waived the $2,681.91 interest charge. Based on these actions, the Parties

have stipulated that the new "Notice of Default resolve[d] the dispute regarding the 2013 Notice of Default's compliance with RCW § 61.24.030(8)(f)" (Dkt. No. 52 at 2) and Defendants' waiver of the interest charge "resolve[d] the issue identified in the Court's [prior] summary judgment order" (Dkt. No. 56 at 2).

Accordingly, having denied Plaintiff's motion for relief from judgment and the Parties having stipulated that the issues identified in the Court's October 14, 2025 summary judgment order are now resolved, the Court concludes there are no remaining disputed issues of material fact and that Defendants are entitled to summary judgment dismissing this action.

Accordingly, Defendants' second motion for summary judgment (Dkt. No. 73) is GRANTED.

## III ORDER

For the reasons articulated herein, Plaintiff's motion for relief from judgment (Dkt. No. 58) is DENIED and Defendants' motion for summary judgment (Dkt. No. 73) is GRANTED. This matter is now closed.

Lastly, Plaintiff's counsel's motion to withdraw as attorney (Dkt. No. 79) is GRANTED. Should Plaintiff wish to appeal the Court's decision or pursue other relief, Plaintiff will need to retain new counsel or proceed pro se.[5]

Dated this 13th day of August, 2026.

[5] To the extent Plaintiff continues to seek assistance with this matter, Plaintiff may contact the Federal Civil Rights Legal Clinic, which offers free, limited-scope assistance to self-represented litigants in federal civil rights cases, including, but not limited to, following court rules and procedures or preparing case documents. Participation is voluntary and the Clinic operates independently from the Court. To request an appointment, Plaintiffs in Seattle may submit the online form at www.kcba.org/nlc or call 206.267.7070 and press "1" to leave a message. In Tacoma, Plaintiffs may request an appointment by calling 253.368.6690.

David G. Estudillo
United States District Judge